DAVID W. HANSEN (State Bar No. 196958)
WILLIAM J. CASEY (State Bar No. 294086)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone:    (650) 470-4500
Facsimile:    (650) 470-4570

LANCE A. ETCHEVERRY (State Bar No. 199916)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:    (213) 687-5000
Facsimile:    (213) 687-5600

KENNETH A. PLEVAN (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone:    (212) 735-3000
Facsimile:    (212) 735-2000

Attorneys for Plaintiff CALIFORNIA
DOMAIN CONSTRUCTION, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| CALIFORNIA DOMAIN CONSTRUCTION, LLC,<br><br>                    Plaintiff,<br><br>    vs.<br><br>PIRAGASH VELUMMYLUM, an individual; JORDAN TIMMERMANN, an individual; WIRE LABS, INC., a corporation; and DOES 1 through 25, inclusive;<br><br>                    Defendants. | Case No. 5:14-cv-4783<br><br>**COMPLAINT FOR:**<br><br>**(1) TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;**<br>**(2) FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a);**<br>**(3) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;**<br>**(4) CALIFORNIA STATUTORY UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200;**<br>**(5) CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT; and**<br>**(6) CALIFORNIA COMMON LAW UNFAIR COMPETITION.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff California Domain Name Construction ("Plaintiff"), by its undersigned counsel, hereby complains against Defendants Piragash Velummylum ("Velummylum"), Jordan Timmermann ("Timmermann"), Wire Labs, Inc. ("Wire Labs") (collectively, "Defendants"), and Does 1 through 25, upon personal knowledge as to itself and upon information and belief as to all other matters, and alleges as follows:

**INTRODUCTION**

1. This action arises out of Defendants' purposeful and calculated business decision to ignore federal trademark law and the valuable trademark rights of others, in the hopes that its use of the mark "WIRE" – in which Plaintiff holds extremely valuable trademark rights – would somehow be "under the radar" and go unnoticed. As a result of this reckless disregard for well-established federal trademark application procedures and rules, Defendants now must face the consequences of their business gamble – i.e., "use an infringing mark now, and worry about the consequences later." Indeed, as discussed in greater detail below, Defendants are knowingly preventing the launch of a new product that will revolutionize the mobile messaging social media market. As a result of Defendants' willful misconduct, Plaintiff will suffer both irreparable harm and damages that will be in the tens-, if not hundreds-, of-millions-of-dollars.

2. Plaintiff is the owner, by assignment, of the mark "WIRE" (the "Mark"), registered in International Class 38, for, *inter alia*, "Communication services," including "cellular telephone services and e-mail services," and "broadcasting programs via a global computer network," U.S. Reg. No. 2813348 ("the "Registered Mark"), which registered on February 10, 2004, and is incontestable under 15 U.S.C. § 1065. Plaintiff is also the owner of a number of Intent-to-Use ("ITU") applications, all of which have been on file since July 26, 2013 with the U.S. Patent and Trademark Office ("USPTO") and therefore are matters of public record, all for the Mark. One of the ITU applications, Serial Number 86/021,248, is in International Class 45, for, *inter alia*, "Online social networking services provided through a community website; providing online computer databases and online searchable databases in the field of social networking" (the "Class 45 ITU Application"). Plaintiff's additional pending ITU applications for the Mark include the following: (i) 86/021,241 in International Class 42, (ii) 86/021,239 in International Class 41, (iii)

86/021,232 in International Class 38, (iv) 86/021,228 in International Class 35, and (v) 86/021,209 in International Class 9.

3. Defendants named their own application software "Wire" (the "Infringing App"), a social-networking mobile messaging program. The smartphone-and-tablet-based application targets teen audiences with text, photo, and video messaging features. The Infringing App did not become available to consumers until around October 2014, when it launched on the popular mobile application stores Google Play and the Apple iTunes Store. Thus Defendants' actual use in commerce did not begin until more than 14 months after Plaintiffs' ITU applications for the Mark became a matter of public record.

4. Defendants do not own any trademark registrations for the Mark. Nor did they file any ITU applications with the USPTO for said mark. Had they filed ITU applications, they would have given fair notice to the public that they intended to launch a social networking application using the Mark and would have properly taken steps to secure rights to the Mark under United States law.

5. The individual Defendants are experienced businessmen who are aware of the importance of securing federal trademark rights for services such as the Infringing App. Defendant Velummylum was a former Software Developer Manager at the Internet behemoth Amazon.com, where he worked for approximately six years. Defendant Timmermann was a Software Development Engineer at Amazon.com, where he worked for approximately 3 years. After both individual Defendants left Amazon.com, they launched Wire Labs, Inc., in February 2013. (Ex. 1.)

6. In June 2013, Defendants obtained a first round of funding, in the amount of $150,000. (Ex. 2.) Certainly this initial funding allowed Defendants the ability to have filed ITU applications covering the mark they had selected for the Infringing App. In November 2013, Defendants obtained $1.8 million in additional funding. (Ex. 3.)

7. Defendants made a conscious decision not to file a trademark application that would have put the world on notice of their intention to use the Mark for social media messaging services, even though they recognized that their conduct would in time trample on the trademark

rights of others.  By acting in such a reckless and willful fashion, they have put themselves and their investors (the identity of whom are not yet known) in extreme jeopardy, as all could be held legally responsible for the harm suffered by Plaintiff, depending on their degree of knowledge and involvement in Defendants' scheme of infringement.

8.      In furtherance of their "launch now, worry about the consequences later" approach, Defendants proceeded with the launch of the Infringing App in or around October 2014.  By letter dated October 22, 2014, Plaintiff demanded that Defendants cease all use of the Mark.  (Ex. 4.) Defendants ignored the demand and elected, instead, to persist with their infringing conduct (which necessitated the filing of this lawsuit).

9.      This was certainly not the outcome envisioned by Congress when, in 1988, it enacted the Trademark Law Revision Act to allow for and encourage the filing of ITU applications.  That statute provides that the filing of an ITU application constitutes constructive use of a mark, contingent on actual use, which would then, upon registration, confer a right of priority dating back to the filing date of the ITU application, nationwide in effect.  15 U.S.C. § 1057(c).

10.     Defendants took a calculated risk in not following the established ITU procedures, and now must answer for their infringing conduct, which will include an injunction barring the conduct of future business under the "WIRE" name and the payment of tens- or hundreds-of-millions-of-dollars in damages.

## JURISDICTION AND VENUE

11.     This is an action seeking injunctive relief and damages for:  (a) trademark infringement arising under 15 U.S.C. § 1114, (b) false designation of origin arising under 15 U.S.C. § 1125(a), (c) intentional interference with advantageous business relations arising under the common law of the State of California, (d) unfair competition arising under California Business & Professions Code § 17200 *et seq.*, (e) trademark infringement arising under the common law of the State of California, and (f) unfair competition arising under the common law of the State of California.

12. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b), and 1367(a).

13. This Court has personal jurisdiction over Defendants by virtue of their offering the Infringing App to potential users throughout the United States, including those in California, and their direct involvement in wrongful conduct designed to inflict harm in this State. Defendants have purposely availed themselves of the thriving technology start-up opportunities that abound in California, and have done so via telephone, via electronic mail, and in person.

14. Specifically, Defendant Wire Labs entered into binding agreements for the distribution of the Infringing App with both the Apple iTunes store and the Google Play store, wherein they agreed that California law applies, and, specifically, submitted to the jurisdiction of the Northern District of California—the judicial district where both Apple and Google are located. As a result of these acts, which were directed towards and in part occurred in this judicial district, venue is appropriate pursuant to 28 U.S.C. § 1391(b)(2).

## PARTIES

15. Plaintiff California Domain Construction, LLC is a limited liability company organized under the laws of Delaware, with a business address in the care of its attorneys, The Law Offices of Joseph P. Bartlett PC, 225 Santa Monica Blvd., 11th Floor, Santa Monica, CA 90401.

16. Defendant Piragash Velummylum is a citizen of the State of Washington, and is the President, Chief Executive Officer, Director, and Co-Founder of Wire Labs. As such, Defendant Velummylum is a central figure in the trademark infringement alleged herein.

17. Defendant Jordan Timmermann is a citizen of the State of Washington, and is the Chief Technology Officer, Director, and Co-Founder of Wire Labs. As such, Defendant Timmermann is a central figure in the trademark infringement alleged herein.

18. Defendant Wire Labs is a company, registered in and operating under the laws of Delaware, with an address located at 2820 Elliot Avenue, Seattle, Washington 98121.

19. The true names and capacities, whether individual, corporate, associate or otherwise, of the defendants sued as Does 1 through 25, inclusive, are unknown to Plaintiff, and Plaintiff therefore sues such Doe Defendants by fictitious names. Each of the fictitiously named

Doe Defendants is in some manner, means or degree responsible for the events and happenings herein alleged. Plaintiff will amend this Complaint to allege their true names and capacities when they have been ascertained.

## AGENCY AND ALTER EGO

20. Plaintiff is informed and believes, and on that basis alleges, that at all times mentioned herein each of the Defendants was an agent, servant, employee, and/or joint venture of the other Defendant, and each Defendant ratified, approved and authorized the acts of the other Defendant with full knowledge of such facts.

21. There is a unity of interest between Timmermann and Velummylum and Wire Labs, and each acts as the alter ego of the other.

22. If not directly liable, the individual Defendants are also liable under the theories of contributory infringement and/or vicarious liability.

## FACTUAL BACKGROUND

**A.    Plaintiff Secured Exclusive Rights In The "WIRE" Mark Through Its Filing Of ITU Applications.**

23. Plaintiff is the subsidiary of a technology company that undertook to develop a new mobile messaging social media application that would revolutionize mobile messaging and online networking (the "Product"). It was determined that the Product would be called "Wire."

24. Desiring to secure U.S. trademark rights in the Mark before beginning the significant investment of time, money, and resources that would be necessary to create the product, Plaintiff filed, on July 26, 2013, ITU applications with the USPTO, including one in International Class 45, for "Online social networking services."  (Ex. 5.)

25. ITU applications were authorized by the Trademark Law Revision Act of 1988 ("TLRA"). Such applications permit companies the opportunity to secure rights in a particular mark during the "start up" time it takes to develop the product upon which the mark is intended to be used in commerce. In adopting a trademark application system based upon "intent-to-use", Congress addressed the inequitable and investment-discouraging scenario where a company has invested resources in developing and branding a product, and, prior to its being ready to bring the branded product to market, is usurped in priority of trademark rights by another party.

26. The filing of an ITU application constitutes constructive use of a mark, contingent on actual use, which would then, upon registration, confer a right of priority dating back to the filing date of the ITU application, nationwide in effect.

27. On May 14, 2014, the USPTO approved Plaintiff's Class 45 ITU Application for publication to the Principal Register, the primary register of trademarks maintained by the USPTO.

28. On July 1, 2014, the Class 45 ITU Application was published for opposition, meaning that the Mark was published in the USPTO's weekly <u>Official Gazette</u>, giving notice to any party who believes it will be damaged by registration of the Mark. Such parties have 30 days from the publication date to file either an opposition to registration or a request to extend the time to oppose.

29. No oppositions to registration were filed in response to the publication of Plaintiff's Mark. Therefore, at the end of the 30-day opposition period, on August 26, 2014, Plaintiff received a Notice of Acceptance from the USPTO, approving the Class 45 ITU Application for the Mark. Said Application will automatically proceed to register upon the filing of a statement of use.

**B. Plaintiff Secured Further Rights To The Mark Through Acquisition Of A U.S. Federal Trademark Registration.**

30. In May 2000, Messe Dusseldorg GmbH ("Messe"), a limited liability company based in Germany, filed a U.S. federal trademark registration for the Mark, in Classes 16 (Printed matter), 37 (Fair stalls), 38 (Communication services), and 44 (Architectural consultation) (U.S. Reg. No. 2813348). Said registration issued on February 10, 2004.

31. For Class 38, the Registered Mark covered "Communication services", which encompasses "Communication services, namely, television broadcasting, radio broadcasting and broadcasting programs via a global computer network; telecommunications, namely, telephone services, cellular telephone services and e-mail services; radio and television broadcasting." The Registered Mark is incontestable pursuant to 15 U.S.C. § 1065.

32. In order to shore up its rights in the Mark, and recognizing that the Registered Mark could create consumer confusion with Plaintiff's contemplated use of the Mark and desiring to

6
COMPLAINT                                                                        Case No. 5:14-cv-4783

avoid any such issue, effective as of July 1, 2014, Plaintiff obtained an assignment from Messe of any and all rights in the Registered Mark in Class 38 ("Communication services").

33. On October 23, 2014, Messe filed a Request to Divide Registration with the USPTO, alerting the USPTO that ownership of Class 38 of the Registered Mark, for Communication services, had been transferred from Messe to Plaintiff (Ex. 6.).

**C. Defendants Establish Wire Labs As The First Step In Their Scheme Of Infringement.**

34. In February 2013, individual Defendants Velummylum and Timmermann filed a Certificate of Incorporation in the State of Delaware for "Wire Labs, Inc." (Ex. 7.) This date of establishment was further confirmed by the publicly-available listing on the start-up database website Crunchbase.com. (Ex. 1.)

35. As the Founders, Directors, and senior executive officers of Wire Labs, Defendants Velummylum and Timmermann have been responsible for all activities of the company since its inception – including the willful infringing conduct outlined herein.

36. Without regard to the intellectual property rights held by Plaintiff, Defendants developed the Infringing App "Wire," a social media mobile messaging application program that targeted teenage audiences with text, photo, and video messaging features.

37. In need of funding to implement their scheme of infringement, Defendants raised nearly $2 million in capital between June and November 2013. (Exs. 2-3.) Defendants disclosed to investors their business plan, which was based on their desire to take their product to market at the earliest possible opportunity in complete disregard of the intellectual property rights of others (including, specifically, the rights of Plaintiff). Indeed, with at a minimum constructive knowledge of the ITU applications that had been filed, Defendants convinced investors to fund their scheme to infringe on the Mark "WIRE." It thus follows that the investors may have had constructive knowledge of, facilitated and condoned Defendants' infringing activity.

38. In an effort to bring their product to market without any interference from the holders of intellectual property rights in the Mark, including Plaintiff, Defendants elected not to file trademark applications for the Mark "WIRE." Thus, they worked covertly in developing and

testing their product, with the intention to use it under the "WIRE" mark, and then sought to launch it with full knowledge that doing so would trample the rights of Plaintiff in the Mark.

**D.   With Full Knowledge That They Were Infringing The Rights Of Plaintiff, Defendants Recently Launched Their "Wire" Product.**

39.   In late September 2014, with the full knowledge and support of their investors, Defendants announced the Infringing App on the Wire Labs website.  (Ex. 8.)  As Defendants well know, to be successful in the market, any company offering "goods and services that include video and text messaging" must of necessity utilize the distribution services of mobile application stores such as Google Play and iTunes.  (Ex. 4 at p.2.)  As such, Defendants promptly applied for acceptance to popular mobile application stores such as Google Play and iTunes.

40.   After executing contracts with Google and Apple, the Infringing App launched on Google Play and iTunes in or around October 2014.  This marked the commencement of the use in commerce of the Mark "WIRE" by Defendants.

**E.   Defendants' Infringing App Is Interfering With And Delaying The Launch Of Plaintiff's Revolutionary New Mobile Messaging Social Media Application.**

41.   Having secured the rights to use the "WIRE" mark in commerce, Plaintiff's parent company has spent the last two years and tens-of-millions of dollars in researching and developing a revolutionary new mobile messaging social media application.  This application, which was intended to operate in the same space as the Infringing App (but with vastly superior features and functionality), is set to launch under the name "Wire" in November 2014.

42.   By virtue of Defendants' Infringing App, which is occupying *the same space* under *the same name*, the planned launch of the "Wire" product will be delayed and is being hindered substantially.  Indeed, as Defendants are fully aware, Apple and Google may not permit two different apps with the same name to appear on their sites, nor would it be prudent to do so as customer confusion would be inevitable.  This interference has caused and will continue to cause both irreparable and substantial monetary harm to Plaintiff – with money damages alone measuring in the tens- or hundreds-of-millions-of-dollars.

43.   Upon learning of Defendants' flagrant infringement of its intellectual property rights, Plaintiff, by letter dated October 22, 2014, demanded that Defendants cease all use of the

Mark, based on Plaintiff's prior rights (including Plaintiff's ownership of the Registered Mark). (Ex. 4.) Defendants failed to take any action to cease use of the Mark after receipt of the letter, despite Plaintiff's plainly superior rights in the Mark. Thus, Plaintiff was left no choice but to initiate this litigation to put an end to Defendants' infringing activity and to hold those behind the willful infringement responsible for their actions.

## SPECIFIC CLAIMS

## FIRST CAUSE OF ACTION

**(Trademark Infringement Under 15 U.S.C. § 1114)**
**(Against All Defendants)**

44. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 43 as though fully set forth herein.

45. Plaintiff is the owner of the Registered Mark in Class 38—"Communication Services."

46. Defendants have used in commerce, without permission of Plaintiff, marks that are confusingly similar to the Registered Mark. Defendants have infringed the Registered Mark and created a false designation of origin by using confusingly similar marks, including "WIRE," in connection with the distribution, sale, advertising, and/or promotion of Defendant's mobile messaging application and related services.

47. Defendants were aware of the Registered Mark at least as early as October 22, 2014, when Plaintiff by letter informed Defendants of said registered mark and protested Defendants' infringing use. By having this actual knowledge and continuing to use "WIRE," Defendants have, and without the consent of Plaintiffs, willfully violated 15 U.S.C. § 1114.

48. Defendants have used the mark "WIRE" with the intent to infringe and usurp Plaintiff's trademark rights in the Mark.

49. Defendants' aforementioned acts have caused damages to Plaintiff in an amount to be proven at trial.

50. Plaintiff is also being irreparably injured. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## SECOND CAUSE OF ACTION

**(False Designation of Origin Under 15 U.S.C. § 1125(a))**
**(Against All Defendants)**

51. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 50 as though fully set forth herein.

52. Defendants' use of the Mark in connection with Defendants' mobile messaging application and related services is confusingly similar to Plaintiff's rights in the Mark.

53. Defendants were informed, by letter dated October 22, 2014, of Plaintiff's ownership of the Registered Mark, and of Plaintiff's ITU applications for the Mark for use in connection with, *inter alia*, mobile applications and social networking services. Specifically, Defendants were notified that "both companies offer goods and services that include video and text messaging software and services," and that continued use by Defendants "will inevitably lead to confusion among distributors and customers alike." (Ex. 4, pp.1-2.) By having this actual knowledge and continuing to use "WIRE," Defendants have, without the consent of Plaintiff, willfully violated 15 U.S.C. § 1125(a).

54. Defendants are doing so with the intent to unfairly compete against Plaintiff, to trade upon Plaintiff's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that Defendants' services are associated with, sponsored by, or approved by Plaintiff, when they are not.

55. Defendants' aforementioned acts and statements have caused damages to Plaintiff in an amount to be proven at trial.

56. Plaintiff is also being irreparably injured. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## THIRD CAUSE OF ACTION

**(Intentional Interference With Prospective Economic Advantage)**
**(Against All Defendants)**

57. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 56 as though fully set forth herein.

58. Defendants were informed, by letter dated October 22, 2014, of Plaintiff's ownership of the Registered Mark, and of Plaintiff's ITU applications for the Mark for use in connection with, *inter alia*, mobile applications and social networking services. Specifically, Defendants were notified that "both companies offer goods and services that include video and text messaging software and services," and that continued use by Defendants "will inevitably lead to confusion among distributors and customers alike." (Ex. 4, pp.1-2.)

59. As Defendants well know, any company offering "goods and services that include video and text messaging" (Ex. 4 at p.2) must of necessity enter into contracts with mobile application stores such as Google Play and iTunes.

60. By refusing to change the name of the Infringing App, Defendants intended to, and did, infringe on the superior rights held by Plaintiff and thereby interfered with the marketing and launch of the Product.

61. Defendants' conduct interfered with Plaintiff's prospective economic relationships and caused, and/or were a substantial factor in causing, damages to Plaintiff in an amount to be proven at trial. Plaintiff will lose substantial revenues that would be realized but for Defendants' false representations and interference.

62. Plaintiff is also being irreparably injured. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiff's rights, for which Plaintiff has no adequate remedy at law.

## FOURTH CAUSE OF ACTION

**(California Statutory Unfair Competition Under Cal. Bus. & Prof. Code § 17200)**
**(Against All Defendants)**

63. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 62 as though fully set forth herein.

64. By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the consumers and public and have unfairly competed in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

65. Defendants' acts complained of herein constitute unlawful, unfair, malicious or fraudulent business practices, which have injured and damaged Plaintiff.

66. As a direct and proximate result of Defendants' acts complained of herein, Plaintiff will suffer great harm in an amount to be determined at trial. Plaintiff has also been irreparably injured. Plaintiff will continue to be irreparably damaged unless Defendants are enjoined from further committing unfair and unlawful business practices against Plaintiff.

**FIFTH CAUSE OF ACTION**

**(California Common Law Trademark Infringement)**
**(Against All Defendants)**

67. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 66 as though fully set forth herein.

68. By virtue of the acts complained of herein, Defendants have caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby infringing Plaintiff's trademark rights, in violation of the common law of the State of California.

69. Plaintiff is being irreparably injured. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violations of Plaintiff's rights, for which Plaintiff has an adequate remedy at law.

**SIXTH CAUSE OF ACTION**

**(California Common Law Unfair Competition)**
**(Against All Defendants)**

70. Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 69 as though fully set forth herein.

71. By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere,

thereby unfairly competing with Plaintiff in violation of the common law of the State of California.

72.   Plaintiff is being irreparably injured.  Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violations of Plaintiff's rights, for which Plaintiff has an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.   Awarding Plaintiff preliminary and permanent injunctive relief;

2.   An accounting of and disgorgement of any and all profits derived by Defendants and all damages sustained by Plaintiff by virtue of Defendants' acts complained of herein in an amount to be determined at trial;

3.   Other economic and consequential damages in an amount to be determined at trial;

4.   An award of interest on all applicable damages under California Civil Code § 3288;

5.   Punitive, enhanced, and exemplary damages, pursuant to 15 U.S.C § 1117 and California Civil Code § 3294, for Defendants' willful infringement;

6.   An order declaring that Defendants have violated and willfully violated the provisions of 15 U.S.C. § 1114 by infringing Plaintiff's trademark rights;

7.   A final judgment declaring that Defendants have violated and willfully violated the provisions of 15 U.S.C. § 1125(a) by falsely designating the origin of Defendants' products and unfairly competing with Plaintiff through the marketing, sale, and promotion of Defendants' products and services using the name "WIRE";

8.   A judgment that Defendants have unfairly competed with Plaintiff under Cal. Bus. & Prof. Code § 17200, *et seq.*;

9.   A judgment that Defendants have unfairly competed with Plaintiff under the common law of the State of California;

10.   The destruction, within thirty (30) days of this Court's Order, of all materials bearing the infringing Mark, pursuant to 15 U.S.C. § 1118;

1     11.    Attorneys' fees, witness fees and the costs of the litigation incurred by Plaintiff in an amount to be determined at trial;

2     12.    For the costs of the suit incurred herein; and

3     13.    For such other and further relief as the Court deems just and proper.

Dated:  October 28, 2014        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:    */s/ David W. Hansen*
       David W. Hansen
      Attorneys for Plaintiff

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues raised by the pleadings which are so triable.

Dated: October 28, 2014     SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: _____*/s/ David W. Hansen*_____
David W. Hansen
Attorneys for Plaintiff

---

COMPLAINT                           15                     Case No. 5:14-cv-4783